**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KENTRELL WINSTON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 20-2823** |
| **COMMISSIONER OF SOCIAL SECURITY** | **SECTION "J" (3)** |

**REPORT AND RECOMMENDATION**

Plaintiff Kentrell Winston brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II of the Act, 42 U.S.C. § 423(d)(1)(A). The matter has been fully briefed on cross-motions for summary judgment. The issues are thus ripe for review. For the following reasons, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

In a decision dated May 11, 2012, Plaintiff was found disabled beginning February 27, 2012, due to human immunodeficiency virus ("HIV") and cervical cancer. (Rec. Doc. No. 25-1, p. 2) (citing Tr. 29, 203). On August 20, 2018, a disability hearing officer issued a decision finding that Plaintiff's disability ceased on August 1, 2018. *Id*. (citing Tr. 206-21) A reconsideration hearing was held, and a state agency disability hearing officer upheld the determination that Ms. Winston was no longer disabled. (Rec. Doc. No. 22-1, 0. 2) (citing Tr. 29). On June 11, 2019, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id*. The ALJ held a hearing on November 26, 2019, with the assistance of an impartial vocational

1

expert. (Rec. Doc. No. 25-1, p. 2). On January 23, 2020, the ALJ issued a decision finding that Ms. Winston was no longer disabled. *Id*.

The ALJ analyzed the claim pursuant to the sequential evaluation process for medical improvement cases. *See* 20 C.F.R. § 404.1594. As a preliminary matter, the ALJ recognized the May 11, 2012 determination that Ms. Winston was disabled. (Rec. Doc. No. 25-1, p. 3) (citing Tr. 31). This date became the comparison point decision ("CPD"). *Id*. The ALJ then noted that at the time of the CPD, Ms. Winston's HIV and cervical cancer diagnoses met the requirements of Listing 14.08. *Id*.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity through January 23, 2020, the date of the ALJ's decision. *Id*. At step two, the ALJ determined that, since August 1, 2018, the Plaintiff had the following medically determinable impairments: HIV, obesity, diabetes mellitus, peripheral neuropathy, asthma, spine disorders, depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders. *Id*. However, the ALJ determined that, since August 1, 2018, Plaintiff had not had an impairment or a combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. At step three, the ALJ found that medical improvement occurred on August 1, 2018, and at step four, determined that the medical improvement was related to the ability to work because Ms. Winston's cervical cancer diagnosis was in remission and her HIV was controlled with stabilizing medication. *Id*. (citing Tr. 34-35). At step five, the ALJ determined that no exception applied that would render Ms. Winston disabled under the meaning of the Act. *Id*.

At step six, the ALJ determined that Ms. Winston continued to have a severe impairment or combination of impairments and went on to determine her residual functional capacity

("RFC"). *Id*. at 4. The ALJ determined that Ms. Winston had an RFC to perform a range of light work, with the following limitations:

- She can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds.
- She can stand and/or walk for four hours out of an eight-hour day and sit for six hours out of an eight-hour day.
- She can occasionally balance, stoop, kneel, crouch, and crawl.
- She can occasionally operate foot controls bilaterally.
- She should avoid uneven, rough, and vibrating surfaces.
- She should avoid unprotected heights and hazardous machinery.
- She should avoid concentrated exposure to fumes, dust, gases, odors, and other pollutants, and poor ventilation.
- The work should be unskilled, simple, routine, and repetitive with occasional changes to the work-setting and only occasional work-related decision making.
- The work should not involve any more than one to two step tasks.
- The work should not be assembly line type work or fast paced production work.

*Id*. (citing Tr. 35). Continuing to step seven, the ALJ found that Ms. Winston was unable to perform her past relevant work since August 1, 2018. *Id*. (citing Tr. 40). Next, with the aid of vocational expert testimony about whether jobs exist in the national economy for an individual with Ms. Winston's age, education, work experience, and RFC, the ALJ determined that there was a significant number of jobs in the national economy that Plaintiff could perform, including booth cashier, information clerk, and ticket taker. *Id*. (citing Tr. 21-22). Therefore, the ALJ concluded that Ms. Winston's disability ended on August 1, 2018. *Id*. (citing Tr. 41-42).

Plaintiff appealed to the Appeals Council, which denied the request for review on August 12, 2020. *Id*. (citing Tr. 1-5, 289-90). Accordingly, the ALJ's decision became the final decision for purposes of judicial review.

## II.    STANDARD OF REVIEW

3

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether the decision is supported by substantial evidence and whether the proper legal standards are applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence standard has been compared to the deferential clearly erroneous standard. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (citing *Dickinson v. Zurko*, 527 U.S. 150 (1999)). In other words, substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

Although a reviewing court must review the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues *de novo*, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive, and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)) (per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). If this duty is not satisfied, the resulting decision cannot be said to be supported by substantial evidence. *See id*. However, the Court does not expect procedural perfection and will reverse as not supported by substantial

evidence only if the failure to develop the record prejudiced the plaintiff. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). In other words, the plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for benefits under the Act, a plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only previous work, but cannot, considering age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501-404.1599 & Appendices, §§ 416.901-416.988 (1995).

In the Benefits Review Act of 1984, 42 U.S.C. § 423(f), Congress established specific standards for the termination of disability benefits. Pursuant to the new standards, the Secretary may terminate disability benefits if substantial evidence demonstrates that:

> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>
> (B) the individual is now able to engage in substantial gainful activity; ...

*Id*. § 423(f)(1); *Griego v. Sullivan*, 940 F.2d 942, 943-44 (5th Cir. 1991).

The first part of the evaluation process, then, focuses on medical improvement. *Griego*, 940 F.2d at 944. The regulations define a medical improvement as "any decrease in the medical severity of [] impairment(s) which was present at the time of the most recent favorable medical decision" of disability or continued disability. 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)," and medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3); *Griego*, 940 F.2d at 944.

The second part of the evaluation process relates to the ability to engage in substantial gainful activity. *Griego*, 940 F.2d at 944. Here, the regulations incorporate many of the standards governing initial disability determinations. *See* 20 C.F.R. §§ 404.1594(b)(5) and (f)(7). The difference, of course, is that the ultimate burden of proof lies with the Secretary in termination proceedings. In evaluating the ability to engage in substantial gainful activity, the Secretary first considers whether the claimant can perform past relevant work, and, if not, whether the claimant can perform other work. 20 C.F.R. §§ 404.1594(f)(7) and (f)(8).

The implementing regulations specifically set forth an eight-step process for determining whether a claimant's disability has ceased. *Id*. § 404.1594(f)(1)-(8). To determine if the claimant continues to be disabled, the ALJ must analyze the following:

(1) whether the claimant engaged in substantial gainful activity;

(2) whether the claimant has an impairment or combination of impairments which meet or equals a listed impairment;

(3) whether there has been medical improvement;

(4) if there has been medical improvement, whether that improvement is related to the claimant's ability to work;

(5) if no medical improvement has been found, or if any medical improvement found was not related to the claimant's ability to work, whether there are any exceptions to the medical improvement standard of review;

(6) if the claimant's medical improvement is related to the ability to do work, whether the claimant's current impairments, in combination, are "severe" (if the impairments are not severe, the claimant is no longer deemed disabled);

(7) whether the claimant has sufficient residual functional capacity, despite impairments, to perform past relevant work; and

(8) considering the claimant's residual functional capacity, age, education, and past relevant work, whether the claimant can do other work.

§ 404.1594(f)(1)-(8); *Griego*, 940 F.2d at 944 n. 1.

## IV.    ISSUES ON APPEAL

    a.  Whether the ALJ properly considered the subjective complaints put forth by Plaintiff.

    b.  Whether the ALJ properly considered the medical opinion of the treating physician in assessing the RFC.

    c.  Whether the ALJ properly considered the opinion of the consultative examiner in assessing the RFC and considered all impairments in combination.

    d.  Whether the Appeals Council properly denied review.

## V.    DISCUSSION

### a.  Whether the ALJ properly considered the subjective complaints put forth by Plaintiff

Plaintiff contends that the ALJ erred in its determination of significant medical improvement by not finding the Plaintiff credible as to the severity of her symptoms. (Rec. Doc. No. 22-1, p. 7) (citing Tr. 31, 33). Specifically, Plaintiff contends that the ALJ erred in its credibility determination regarding "the frequency and severity of her anxiety and concentration impairments when combined with her chronic pain." *Id*. at 8. Plaintiff contends that the

credibility determination was based on minimal objective findings in the record related to her impairments. *Id*. at 9.

Plaintiff contends that the ALJ must present clear and convincing rationale for a negative creditability determination since the record "contains no affirmative evidence that Ms. Winston is malingering." *Id*. Plaintiff argues that the ALJ erred by failing to identify the testimony deemed not credible and why and gave no "specific reasons for discounting Ms. Winston's credibility." *Id*. at 10. Plaintiff further argues that "[w]hen properly considered, Ms. Winston's testimony is supported by the medical record." *Id*. Thus, Plaintiff contends this warrants remand for further review.

The Commissioner contends that in this case, the ALJ considered subjective complaints and testimony regarding Plaintiff's limitations, the objective medical evidence, her daily activities, and other pertinent factors. Based on these considerations, the ALJ properly concluded that, while her medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects were not credible and she was in fact capable of performing a modified range of light work. (Rec. Doc. No. 25-1, p. 6-7).

When statements concerning the intensity, persistence, or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Foster v. Astrue*, 277 F. App'x 462, 465 (5th Cir. 2008); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). The relative weight to be given to the evidence is within the ALJ's discretion. *Chambliss*, 269 F.3d at 523 n. 1. Subjective complaints must be corroborated, at least in part, by objective medical findings. *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (citations omitted); *Owens v. Heckler*, 770 F.2d 1276, 1281-82 (5th Cir. 1985);

*Chambliss*, 269 F.3d at 522. Here, the ALJ considered the subjective complaints and testimony regarding Plaintiff's limitations, the objective medical evidence, her daily activity, and other pertinent factors and ultimately concluded that while her medically determinable impairments could reasonably be expected to cause the alleged symptoms, Ms. Winston's statements regarding the intensity, persistence, and limiting effects were not credible. (Rec. Doc. No. 18-3, p. 12).

The testimony relied on by Plaintiff as the primary support for the limitations, including the time needed to elevate her legs, being off task from chronic pain, urinary issues, and struggles with anxiety symptoms are merely subjective. Defendant contends, and this Court agrees, that the ALJ properly considered the medical evidence showing that Plaintiff exhibited normal strength and normal range of motion with no cranial or sensory deficits. (Rec. Doc. No. 25-1, p. 7) (citing Tr. 36-38). According to the ALJ, "the record as a whole contain[ed] minimal objective findings related to the claimant's physical impairments, which is not reflective of the substantial limitations alleged." (Rec. Doc. No. 18-3, p. 14). The ALJ further noted that Plaintiff's "HIV is well controlled and [that] she is stable on medication." *Id.* Additionally, while Plaintiff's legs were noted as slightly swollen on March 18, 2019, the ALJ noted that the swelling subsided when properly medicated on hydrochlorothiazide. *Id.* The record also showed that Plaintiff had a normal range of motion of her musculoskeletal system. *Id.* Lastly, Ms. Winston's lungs were clear to auscultation bilaterally on February 26, 2019. *Id.*

As for mental impairments, the ALJ noted that "the record as a whole contains minimal objective findings related to the claimant's mental impairments, which is not reflective of the substantial limitations alleged." *Id.* Rather, the ALJ determined that the Plaintiff "had generally normal mental status findings indicating normal intelligence, normal speech, well developed and

well nourished, alert and oriented, cooperative and normal behavior, normal judgment, and normal mood and affect." *Id*. Furthermore, the ALJ considered Plaintiff's own statements that she "could follow instructions really well" and that she "was a people person." (Rec. Doc. No. 18-3, p. 9).

Subjective complaints need not take precedence over objective medical evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). "The ALJ properly interpret[s] the medical evidence to determine [a claimant's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (citing *Holman v. Massanari*, 275 F.3d 43 (5th Cir. 2001)). Accordingly, the ALJ's credibility determinations are entitled to considerable deference, and the ALJ did not err in considering the Plaintiff's subjective complaints.

> **b. Whether the ALJ properly considered the medical opinion from the treating physician in assessing the RFC of Plaintiff**

Plaintiff contends that the ALJ erred in giving little weight to the treating primary care doctor, Dr. Hagensee, who opined that Plaintiff was unable to work. (Rec. Doc. No. 22-1, p. 10). Plaintiff states that the ALJ "committed legal error by assigning Dr. Hagensee's opinion little weight as Dr. Hagensee's opinions are consistent and supported by the record." *Id*. at 12.

The Commissioner contends that the ALJ's evaluation of the medical opinion evidence comports with the relevant guidelines. (Rec. Doc. No. 25-1, p. 9). The Commissioner points out that the ALJ specifically articulated the persuasive weight accorded to the medical opinion in comparison to the objective medical findings of the record. (Rec. Doc. No. 25-1, p. 9).

At the outset, the Court notes that the regulations provide that for claims filed on March 27, 2017 or later, the agency "will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s),
including those from [the claimant's own] medical sources. 20 C.F.R. §§ 404.1520c(a),
416.920c(a) (2017); *Winston v. Berryhill*, 755 Fed. Appx. 395, 402 n. 4 (5th Cir. 2018). Here,
Plaintiff's disability purportedly ceased on August 1, 2018. These regulations no longer mandate
particularized procedures in consideration of opinions from treating sources. Rather, the ALJ
should use the following five factors to determine the persuasiveness of the medical opinions or
prior administrative medical findings: (1) supportability; (2) consistency; (3) relationship with
the claimant, including length of relationship, frequency of examinations, purpose of the
treatment relationship, extent of the treatment relationship, and the examining relationship; (4)
specialization; and (5) other factors. 20 C.F.R. §§404.1520(a)-(c), 416.920c(a)-(c) (2017); *Liguez
v. Kijakazi*, 2021 WL 4943321 at *6 (N.D. Tex. Aug. 11, 2021).

The two most important factors in determining the persuasiveness of a medical opinion or
prior administrative medical finding are supportability and consistency, and the ALJ must
explain how he considered those factors. *Id*. The ALJ may, but is generally not required to,
explain how he considered the remaining factors, unless there is also a determination that two or
more medical opinions or prior administrative medical findings concerning the same issue are
equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§
404.1520c(b)(3), 416.920c(b)(3) (2017). Additionally, the ALJ will consider one or more
medical opinions or prior administrative medical findings from the same medical source using
the above factors and is not required to articulate how he considered each opinion or finding. *Id*.
§§ 404.1520c(b)(1), 404.1520c(b)(1) (2017).

The revised regulations further clarify how evidence from federal and state agency
medical and psychological consultants should be considered. While ALJs are not required to

adopt prior administrative medical findings, they must still consider this evidence in accordance with the regulations as appropriate, inasmuch as federal or state agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (2017) (citing §§ 404.1520b, 404.1520c, 404.1527, 416.920b, 416.920c, 404.1527).

The evidence in the record before the ALJ included a determination by Dr. Hagensee, the primary care doctor of Ms. Winston for over thirteen years. The opinion of Dr. Hagensee provided that Ms. Winston was limited to a less than sedentary physical RFC and concluded that Ms. Winston is "disabled in terms of employment." (Rec. Doc. No. 22-1, p. 11) (citing Tr. 741). Indeed, there is very little information in the record from Dr. Hagensee.[1] He states in full:

> Ms. Kentrell Winston is a patient under my care. She has a number of medical problems that I am treating her for including severe, out of control diabetes. This is causing her a severe peripheral neuropathy involving both feet. This painful condition makes it difficult to impossible for her to walk, stand or sit long enough to be employed at this time. We are working on ways to improve this condition. I do not see her status improving greatly for 4-6 months if this can happen at all. At this time, I feel that she is disabled in terms of employment.
> (Rec. Doc. No. 18-14, p. 27).

Regarding this opinion, the ALJ stated: "Michael Hagensee, M.D., opined that the claimant was disabled in terms of employment (Ex. 11F/2). The Social Security Administration makes determinations of disability according to Social Security law, therefore a determination of

---

[1] Plaintiff's brief, however, includes in detail findings from a letter dated February 21, 2020, in which Dr. Hagensee provided "medical source opinions detailing" a variety of Plaintiff's impairments, symptoms, side effects of medication, and restrictions to standing and/or walking less than 2 hours in an 8-hour workday and sitting for one hour at one time in an 8-hour workday. (Rec. Doc. No. 22-1, p. 11). This medical source statement, dated February 21, 2020, was submitted to the Appeals Council *after* the ALJ issued a final decision on January 23, 2020, determining Ms. Winston was no longer disabled. (Rec. Doc. No. 18-3). The Appeals Council held that "this evidence does not show a reasonable probability that it would change the outcome of the decision," and therefore, "found no reason under our rules to review the [ALJ's] decision." (Rec. Doc. No. 18-2, p. 3). Whether the Appeals Council properly denied review is discussed in detail in subsection V(d) *infra*. This subsection is limited to determining whether the ALJ properly weighed the medical opinion evidence of Dr. Hagensee, Plaintiff's treating physician.

disability by another agency is not binding on this proceeding. (20 CFR 404.1527(e)). Accordingly, the undersigned gives this opinion little weight." (Rec. Doc. No. 18-3, p. 16).

Here, the ALJ appropriately evaluated Dr. Hagensee's opinion. As the ALJ indicated, Dr. Hagensee opined that the claimant was "disabled in terms of employment," and therefore, gave little weight to his opinion. As the ALJ stated, the Social Security Administration makes determinations of disability under the Act, therefore a determination of disability by another agency is not binding. (Rec. Doc. No. 18-3, p. 16) (citing 20 CFR 404.1527(e)).

The Fifth Circuit has held that an opinion that a claimant is "disabled" is not entitled to controlling weight or significance under the Act. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam) (recognizing that "medical opinion" has a specific regulatory definition). Furthermore, an opinion that a claimant is "disabled" may reflect a misunderstanding of the term as it is defined under the Act. *Milam v. Bowen*, 782 F.2d 1284, 1287-88 (5th Cir. 1986). As the ALJ noted, "the record as a whole contains minimal objective findings related to the claimant's physical impairments, which is not reflective of the substantial limitations alleged." (Rec. Doc. No. 18-3, p. 14). Dr. Hagensee's opinion on whether Plaintiff is disabled in terms of employment was not binding and was not supported by objective findings in the record. It was simply a one-paragraph letter laying out conclusions with no evidence to support them. Thus, the ALJ did not err in his finding the opinion of Dr. Hagensee unpersuasive, nor in according minimal weight to the cursory opinion. The ALJ pointed to the lack of consistency in the evidence to support Ms. Winston's claims. Therefore, the ALJ properly weighed the medical opinion evidence at the time of the hearing from Dr. Hagensee.

    **c.** **Whether the ALJ properly considered the opinion from the consultative examiner in assessing the RFC and considered all impairments in combination**

       i. <u>Opinion of Consultative Examiner</u>

Plaintiff contends that the ALJ erred by not accounting for her "moderate to severe" difficulty with concentration limitations found by consultative examiner Carlos Kronberger, PhD, and how it would impact her daily work. (Rec. Doc. No. 22-1, p. 15). Plaintiff contends that the evidence in the record shows that her ability to concentrate, persist, or maintain pace is at an "extreme limitation meeting Medical Listing 12.04 for depression" because she is "unable to function in the area independently, appropriately, effectively, and on a sustained basis." *Id.*

The Commissioner contends that there was no error in the consideration of Dr. Kronberger's opinion in the RFC and "no merit to Plaintiff's claim that the ALJ should have accepted all of Dr. Kronberger's findings." (Rec. Doc. No. 25-1, p. 13). The Commissioner contends that Plaintiff is mistaken in believing the RFC should mirror a medical opinion, because an RFC determination is the ALJ's sole responsibility, not the responsibility of any physician, and such an assessment is not a medical opinion. *Id.* (citing *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).

The ALJ stated the following regarding Dr. Kronberger's evaluation:

Consultative examiner, Dr. Kronberger, opined that the claimant was able to understand and remember directions for simple repetitive tasks; had moderate difficulties with social interaction; had moderate to severe difficulty with concentration; her persistence and pace will be affected by physical conditions and chronic pain; and had a limited ability to tolerate stress and adapt to conditions at work (Ex. 6F/4). The undersigned gives somewhat significant weight to this opinion.

The undersigned agrees that the claimant was able to understand and remember directions for simple repetitive tasks; her persistence and pace will be affected by physical conditions and chronic pain; and had a limited ability to tolerate stress and adapt to conditions at work. The medical record supported this assessment. The claimant appeared to have some problems with memory (Ex. 6F/2). However, the claimant was able to understand directions (Ex. 6F/2). The claimant stated that she did not handle changes in routine well (Ex. 4E). However, the claimant's insight was noted as adequate (Ex. 6F/3). She had normal judgment (Ex. 4F/13).

The undersigned disagrees with the assessment that the claimant had moderate difficulties with social interaction but agrees that had moderate to severe difficulty with

concentration. The claimant was noted as cooperative (Ex. 10F/24). While there is evidence she appeared to be inattentive, this symptom was infrequent (Exs. 6F/2). The claimant exhibited normal concentration and attention (Ex. 2F/4). However, great deference was accorded to the claimant and limitations reflect accordingly in the residual functional capacity above.

(Rec. Doc. No. 18-3, p. 16).

The ALJ gave "somewhat significant weight" to Dr. Kronberger's opinion. *Id*. The ALJ explained that the medical record supported a finding that Ms. Winston was able to understand and remember directions for simple repetitive tasks; her persistence and pace would be affected by physical conditions and chronic pain; and she had a limited ability to tolerate stress and adapt to conditions at work. *Id*. The ALJ noted that, even though Plaintiff appeared to have some problems with memory, she was able to understand and remember directions. *Id*. The ALJ also considered the claim that Ms. Winston did not handle changes in routine well but noted that her insight was adequate in August 2018 and she had normal judgment in March 2019. *Id*. The ALJ disagreed that Ms. Winston had moderate difficulties with social interaction but agreed that she had moderate to severe difficulties with concentration. *Id*. The ALJ noted that Plaintiff was cooperative in February 2019 and exhibited normal concentration and attention at the physical consultative examination where she appeared to be of normal intelligence, exhibited normal understanding, cooperation, concentration, and attention. *Id*. at 14. Plaintiff's memory was normal with 3/3 object recall after approximately ten minutes, she was oriented three times, and there was no visible nervousness or depressed mood. *Id*. This evidence supports the ALJ's finding that Plaintiff had moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace.

This evidence also contradicts the claim that Plaintiff exhibited an "extreme limitation" in her ability to concentrate, persist, or maintain pace, and that the ALJ should have found that she met Listing 12.04 for depression. (Rec. Doc. No. 22-1, p. 17). In fact, "great deference was

accorded" to Plaintiff with an RFC to provide limitations due to her mental impairments. (Rec. Doc. No. 18-3, p. 16). The ALJ limited Plaintiff to work that is unskilled, simple, routine, and repetitive, with occasional changes to the work-setting and only occasional work-related decision making; work that should not involve more than one to two step tasks; and work that should not be assembly line type work or fast paced production work. *Id*. at 11.

The Court finds nothing in the record, nor in the opinion of Dr. Kronberger, to suggest these "extreme limitations." A claimant's RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on *all* relevant evidence in the claimant's record. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)) (emphasis added). Determining a plaintiff's RFC is the sole responsibility of the ALJ, and such an assessment is not a medical opinion. *Taylor*, 706 F.3d at 602-03. The ALJ accorded the appropriate weight to Dr. Kronberger's opinion and appropriately articulated the reasoning pursuant to the revised regulations. The Court finds that significant evidence supports the ALJ's finding that Ms. Winston had "moderate to severe" difficulties with concentration and properly articulated how such limitations would impact daily work. The Court finds no error.

### ii.  Impairments in Combination

Ms. Winston also contends that the ALJ "did not consider whether the combined effects of all impairments, mental and physical, would be of sufficient severity" to approve continuing benefits. (Rec. Doc. No. 22-1, p. 15). Specifically, Ms. Winston argues that "the combined effects from [her] symptoms related to her cancer treatment and anxiety (mainly her chronic pain and concentration issues) should have led the ALJ to finding a continued disability…." *Id*. at 18.

According to the Commissioner, the ALJ correctly stated that the RFC "assessment is supported by the medical record, the minimal treatment records, the claimant's activities of daily living, minimal objective findings, and the record as a whole." (Rec. Doc. No. 25-1, p. 14) (citing Tr. 40). Furthermore, the Commissioner contends that the ALJ properly found the subjective complaints were not supported by the medical evidence and that statements regarding the ALJ's actions should be considered true statements. *Id.* (citing *Brunson v. Astrue*, 387 F. App'x 459, 2010 WL 2802372, at *2 (5th Cir. July 16, 2010)).

In determining whether a claimant's physical or mental impairments are of a sufficient medical severity to serve as a basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *See* 20 C.F.R. § 404.1523; *Crowley v. Apfel,* 197 F.3d 194, 197 (5th Cir.1999); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). If the ALJ finds a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process." 20 C.F.R. § 404.1523. Finally, it is clear that the ALJ must consider all the record evidence and cannot "pick and choose" only the evidence that supports his position. *Loza*, 219 F.3d at 393 (citing *Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir.1984)); *Garfield v. Schweiker,* 732 F.2d 605, 609 (7th Cir.1984); *Green v. Shalala,* 852 F.Supp. 558, 568 (N.D.Tex.1994); *Armstrong v. Sullivan,* 814 F.Supp. 1364, 1373 (W.D.Tex.1993).

Ms. Winston contends that the ALJ failed to consider her subjective claims regarding the combined effect of chronic pain on her ability to concentrate; failed to consider the combination of anxiety with chronic pain regarding staying on task at work; and failed to consider the claims regarding her bladder control and neuropathy. (Rec. Doc. No. 22-1, p. 19-20). This Court

analyzed the weight given to Plaintiff's subjective complaints in great detail *supra* subsection V(a).

The ALJ thoroughly analyzed the record in coming to her conclusions. At multiple times throughout her opinion, the ALJ noted that she was analyzing the claimant's impairments "singly and in combination." On page seven of the opinion, the ALJ notes, "Since August 1, 2018, the claimant's impairments, *considered singly and in combination*, have not met or medically equaled a listing." (Rec. Doc. No. 18-3, p. 7). On the same page, the ALJ states, "The severity of claimant's physical impairments, *considered singly and in combination*, does not meet or medically equal the criteria of any impairment listed in..." *Id*. One page nine, the ALJ stated, "The severity of claimant's mental impairments, *considered singly and in combination*, does not meet or medically equal..." *Id*. at 9. (emphasis added throughout).

Additionally, the ALJ indicated throughout the analysis that all the impairments would be considered in the RFC determination: "the limiting effects of the claimant's diabetes mellitus will be considered as part of the residual functional capacity; "because obesity is a medically determinable impairment, any resulting functional limitations have been considered in the residual functional capacity; "the following residual functional capacity reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Rec. Doc. No. 18-3, pp. 8-10). The Court has found no reason not to believe these statements, and Plaintiff has provided none. *See, e.g., Brunson*, 2010 WL 2802372, at *2 ("To the contrary, [the ALJ's] decision states expressly that it was made '[a]fter careful consideration of all the evidence,' and we see no reason or evidence to dispute this assertion.")

Finally, the impairments that Plaintiff claims were not considered are expressly reflected throughout the RFC determination by articulating numerous limitations. For example, in light of

the complaints of chronic pain affecting her ability to stay on task at work, the ALJ limited the Plaintiff to work that would be "unskilled, simple, routine, and repetitive with occasional changes to the work-setting and only occasional work-related decision making." (Rec. Doc. No. 18-3, p. 11). The ALJ specified that the work should not involve any more than one to two step tasks. *Id*. Regarding the bladder control and neuropathy, the ALJ noted that nothing in the medical record supported these subjective complaints. Thus, the ALJ accounted for all of the alleged impairments, both singly and in combination, and the Court finds no error.

> d.  **Whether the Appeals Council properly denied review**

Ms. Winston contends that the Appeals Council erred in failing to exhibit a new Medical Source Statement from Dr. Hagensee and in denying the request to review the ALJ's decision based on allegedly new and material evidence. (Rec. Doc. No. 22-1, p. 20). Plaintiff states that the medical evidence submitted to the Appeals Council was "new and material, related to the period on or before the date of the hearing decision, would change the outcome of the decision and good cause exists for not submitting it earlier." *Id*. at 22. Ms. Winston indicates that her counsel requested further details through a medical source statement after reading the ALJ decision finding Dr. Hagensee's opinion conclusory. *Id*. Plaintiff states that "[g]ood cause exists for not submitting this medical evidence earlier as it was requested in response to the ALJ finding that Dr. Hagensee's opinion was a conclusory statement about the disability finding... even though the original medical opinion letter was supported at the original hearing by the objective evidence and test results." *Id*. Plaintiff argues that the information is new and material because it clarifies information about Ms. Winston's symptoms and ability to work. *Id*. at 23. Specifically, Plaintiff alleges that the ALJ could have reached different conclusions on the moderate limitation in concentrating, persisting, and maintaining pace, and the moderate

limitations under listing 11.14A and 11.14B related to her peripheral neuropathy. *Id*. at 23-24. Thus, Plaintiff asks for a reversal or remand.

The Commissioner maintains that Plaintiff has failed to establish a lack of substantial evidence to support the finding of the Appeals Council or to satisfy the requirement that the new information be material. (Rec. Doc. No. 25-1, p. 14-15).

The Fifth Circuit has held that "the Commissioner's final decision necessarily includes an Appeals Council's denial of a claimant's request for review," and that, therefore, "the record before the Appeals Council constitutes part of the record upon which the final decision is based." *Sun v. Colvin*, 793 F.3d 502, 510 (5th Cir. 2015) (quoting *Higginbothan v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005)). This Court must examine all of the evidence, including the new evidence submitted to the Appeals Council, to determine whether the Commissioner's final decision to deny Ms. Winston's claim was supported by substantial evidence. *Id*. (citing *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) ("Judicial review of the Commissioner's decision to deny benefits is limited to determining whether the decision is supported by substantial evidence and whether the proper legal standards are applied."); *Higginbotham*, 405 F.3d at 337 ("[T]he evidence submitted for the first time to the Appeals Council is part of the record on appeal because the statute itself provides that such record includes the 'evidence upon which the findings and decision complained of are based.'") (quoting 42 U.S.C. § 405(g))).

The district court "may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…" *Bradley v. Bowen*, 809 F.2d 1054, 1057-58 (5th Cir. 1987) (citing 28 U.S.C. § 405(g)). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be

shown for the failure to incorporate the evidence into the record in a prior proceeding. *Id*. at 1058.

Regarding materiality, the Fifth Circuit has held that "a remand to the Secretary is not justified if there is no reasonable possibility that it would have changed the outcome of the Secretary's determination." *Id*. (quoting *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)). Furthermore, the new evidence should relate to the time period for which benefits were denied. *Id*. (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985)).

Even if the Court were to agree with Ms. Winston that the statement contains new evidence, it must also be material. The Court agrees with the Appeals Council that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Rec. Doc. No. 18-2, p. 3). The statement, titled "Diabetes Mellitus Medical Source Statement," is a six-page check-the-box form that provides very few treatment notes. (Rec. Doc. No. 18-2, pp. 22-26). The Court finds that the information provided by Dr. Hagensee is cumulative, at best, and does not present a reasonable probability of changing the outcome of the ALJ's decision. The statements contained in the six-page source statement are brief and conclusory, and checklist opinions are exactly the type of opinions that the Fifth Circuit has indicated an ALJ would have good cause to reject. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (providing that good cause for rejecting statements in a form includes when the statements are brief and conclusory); *DeJohnette v. Berryhill*, 681 F. App'x 320, 321-22 (5th Cir. 2017). Furthermore, the Fifth Circuit has held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the claimant's underlying medical record. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011). Such checklists have limited evidentiary value. *McLendon v. Barnhart*, 183 F. App'x 430, 432 (5th Cir. 2006).

The arguments put forth by Plaintiff fail to show that the medical source opinion by Dr. Hagensee would have impacted the ultimate outcome of the case. The limitations included in the supplemental source opinion are not supported by the record. For example, the ALJ noted that while Dr. Hagensee found that Ms. Winston's legs were slightly swollen on March 18, 2019, he found that her legs were less swollen on medication. (Rec. Doc. No. 18-3, p. 14). This finding is inconsistent with the supplemental source opinion that Ms. Winston's legs must be elevated for 33 percent of the day. (Rec. Doc. No. 18-2, p. 23). Additionally, in the supplemental source opinion, Dr. Hagensee describes significant problems with Ms. Winston's hands and fingers. (Rec. Doc. No. 18-2, p. 24). However, the ALJ properly considered the findings of the consultative examiner that Plaintiff had normal bilateral hand grip strength in July 2018. (Rec. Doc. No. 18-3, p. 10). Additionally, the record showed Plaintiff had a normal range of motion of her musculoskeletal system in March 2019. (Rec. Doc. No. 18-3, p. 14).

Furthermore, the supplemental source opinion includes minimal information regarding Ms. Winston's mental impairments. At question 8, Dr. Hagensee circled "Yes" in response to the question, "Do emotional factors contribute to the severity of your patient's symptoms and functional limitations?" (Rec. Doc. No. 18-2, p. 22). At question 9, Dr. Hagensee circled "Depression" and "Anxiety" in response to the question, "Identify any psychological conditions affecting your patient's physical health." *Id*. Particularly significant is that Dr. Hagensee circled "Capable of low stress work," in response to the question "To what degree can your patient tolerate work stress?" rather than circling "Incapable of even 'low stress' work." *Id*. at 25. This undermines the argument that the supplemental opinion would have led the ALJ to a different conclusion. If anything, the supplemental report reinforces the determination that the Plaintiff be limited to "unskilled, simple, routine and repetitive work." (Rec. Doc. No. 18-3, p. 11).

The Court also finds that Plaintiff has not shown good cause for the failure to submit the evidence at the administrative level. Plaintiff contends that "[g]ood cause exists for not submitting this medical evidence earlier as it was requested in response to the ALJ finding that Dr. Hagensee's opinion was a conclusory statement..." (Rec. Doc. No. 22-1, p. 22). This is not a valid reason for the failure to submit further documentation supporting Dr. Hagasee's original single paragraph letter. Particularly noteworthy is the exchange between Plaintiff's counsel, Jesse Lind, and the ALJ prior to the hearing:

> ALJ: … Counsel, have you and the claimant had an opportunity to review the file?
> ATTY: Yes, Your Honor.
> ALJ: Are we waiting on any additional documentation?
> ATTY: No, Your Honor. I looked, and I just met her last Wednesday at outreach…
> …
> ALJ: Okay. So, Counsel, you indicated you just met the claimant last Wednesday?
> ATTY: That is correct, Your Honor.
> ALJ: Do you require any additional time to study the case? Do you want to reschedule or –
> ATTY: No, Your Honor. I spoke to claimant and based upon my review of the record, I feel we can go forward today.
> (Rec. Doc. No. 18-4, p. 84-85).

In this case, the ALJ offered to postpone the hearing to give the attorney more time to acquaint himself with the record and ensure everything was properly before the court. The attorney's failure to do so and affirmative indication that everything was ready extinguishes any argument that good cause exists for this untimely submission.

Thus, the Court finds that the Appeals Council properly denied review after determining that the evidence did not show a reasonable probability of effecting the outcome. The Commissioner's decision denying the continuation of benefits is supported by substantial evidence.

## VI.    CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE.**

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 11th day of February, 2022.


_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**